## C. E. CLARK, Appellant, v. UNION IRON & FOUN-DRY COMPANY.

### In Banc, May 9, 1911.

1. **Abstract: No Evidence: Instructions Alone for Review.** Where the sole object of the appeal is to have the Supreme Court review the action of the trial court in giving and refusing instructions, it is not necessary to bring up the evidence in the case. In such case it is sufficient for the bill of exceptions to show that the evidence offered by plaintiff tended to prove all the allegations of the petition, that the evidence offered by defendant tended to contradict the evidence offered by plaintiff, and also tended to prove the allegations of the answer, and that plaintiff offered evidence tending to disprove the allegations of new matter contained in the answer.

2. **NEGLIGENCE: Master and Servant: Reasonably Safe Place.** The unsafe place cannot be restricted to the very place where the servant is required to work. The danger may arise from a separate and independent place, yet so near thereto as to make it reasonably certain that persons while working there are liable to come in contact with such near-by danger and be injured thereby. The danger of the place may be the result of the acts of a third party and arise out of a condition over which the master had no immediate control, and yet the master be liable for his servant's injury.

3. ——: ——: ——: **Electric Wires: Master as Independent Contractor.** A railway company was maintaining a pole, on the cross-arm of which electric wires, strongly charged with electricity, and badly insulated, though the insulation did not appear by casual observation to be defective, were strung. Defendant, an independent contractor, was employed to erect a coal lift or chute, and its foreman ordered plaintiff to mount said pole for the purpose of raising and adjusting a guy rope attached to a gin pole so as to have the guy rope above the

feed wires; and while the plaintiff was on said pole, engaged
in said work, the steel block of the rope came in contact with
the uninsulated wire, and the electricity passed into his body,
causing serious and permanent injuries.  *Held*, that an in-
struction telling the jury that if the foreman of the defendant
had no actual knowledge of the condition of the electric feed
wire, with respect to its insulation and with respect to its
dangerous condition, and had not been informed of the same,
and had no better opportunity than the plaintiff to become
acquainted with its condition, their verdict must be for the de-
fendant, was error.  It is not sufficient that the immediate
place where the servant is required to work is within itself
reasonably safe; it must be reasonably safe from all internal
and external dangers which are liable to injure the servant.  It
was defendant's duty to inspect the premises and ascertain
whether or not there were any dangerous agencies connected
with or about the place where plaintiff was required to work
that would render it unsafe.  The duty to inspect for secret
and hidden dangers rested upon the master.

4. ———: ———: ———: **Hidden Dangers.** It is the master's
duty to inspect and ascertain if hidden and secret dangers are
connected with the place in which the servant is required to
work.  He is not absolved from liability for injury to the ser-
vant by the mere facts that the dangers were hidden and he
knew nothing of them and they were not of his making.

5. ———: ———: ———: ———: **Independent Contractor.** It
is the duty of the owner of the premises to notify the con-
tractor employed to repair them, of hidden dangers; but the
contractor is not absolved from his duty to his servant to in-
spect and notify him of such hidden dangers by the owner's
failure to notify the contractor.

Appeal from St. Louis City Circuit Court.—*Hon. Dan-
iel D. Fisher,* Judge.

REVERSED AND REMANDED.

*William McNamee* and *A. R. Taylor* for appellant.

(1)  The rudimental relation of master and ser-
vant is that it is a duty incumbent upon the master that
he use ordinary care to see that the place where he
orders the servant to perform work or service is rea-
sonably safe for the servant to perform that service.
Dayharsh v. Railroad, 103 Mo. 576; Herdler v. Stove

Co., 136 Mo. 16; Doyle v. Trust Co., 140 Mo. 10; Burkhard v. Rope Co., 217 Mo. 481. (2) This duty, inherent in the master, was charged on the master's vice-principal, the foreman, in this case, and his orders to appellant to ascend the pole and do the work were assurance that the place was reasonably safe for that purpose. Sullivan v. Railroad, 107 Mo. 78; Bane v. Irwin, 172 Mo. 317. (3) Such being the law of the relation between appellant and respondent, it was the duty of the respondent to exercise ordinary care in inspection and inquiry to ascertain whether the wires on the pole were in a reasonably safe condition for appellant to come in contact with or work near whilst doing the work on the pole which he was ordered to do by respondent's vice-principal. (4) In view of the above law of the relation between appellant, the servant, and respondent, the master, instruction 5, given at the request of the respondent, was prejudicial error. The vice of this instruction is that it absolves the master from the duty of inquiry and inspection to ascertain the condition of the wires, and places master and servant on the same plane, with respect to ascertaining the condition of the place where the servant is required to work. The servant, whatever he might have ascertained by inquiry or inspection as to the condition of the wires, and failed to do, had a right, when commanded by his master, to rely on his order to ascend the pole and do the work as an assurance that it was reasonably safe to do so. Sullivan v. Railroad, 107 Mo. 78; Bane v. Irwin, 172 Mo. 316. (5) Instruction 7, given at the request of respondent, was prejudicial error. The vice of this instruction is that it predicates that it was dangerous for respondent to send its men and this appellant up among the feed wires mentioned in the evidence,, and to order them to pass its ropes and tackle over said wires, yet the instruction declares that if said danger was a hidden or secret one, and no warning had been given to the

defendant or its foreman of such hidden or secret danger, and that said defendant had no knowledge, then the verdict should be for that defendant. This instruction remodels the law of the duty of the master to the servant, in that it absolves the master from his duty of inspection or inquiry by the simple fact that a danger is secret or hidden. (6) Instruction 8, given at the instance of respondent, was reversible error.

*Ellerbe & Brokaw* and *Percy Werner* for respondent.

(1) Where the abstract does not contain the evidence essential to a consideration of the case, every presumption is in favor of the judgment as far as the face of the record permits. Miller v. Leeper, 120 Mo. 478; Flynn v. Neosho, 114 Mo. 572; Black v. Railroad, 172 Mo. 188; Hughes v. Gaslight Co., 168 Mass. 395. (2) An instruction may be erroneous when considered only as to the issues, but when considered in the light of all the evidence its error may prove to be harmless, so as not to justify disturbing the judgment. (3) The law relative to the obligation of the master to furnish a safe place for his servant to work in refers only to places over which the master has or exercises a control. Dickson v. Tel. Co., 71 Fed. 143; Channon v. Sanford Co., 70 Conn. 573; Whallon v. Sprague Elevator Co., 1 N. Y. App. Div. 264, 37 N. Y. Supp. 175; Huff v. Green, 168 Mo. 308; Dunlap v. Railroad, 81 Ga. 136; Hughes v. Gaslight Co., 168 Mass. 395. The criticised instructions are in accordance with the law as laid down in these cases.

WOODSON, J.—The plaintiff sued the defendants, Union Iron & Foundry Company and the St. Louis & Suburban Railway Company, for the sum of $30,000 damages sustained by him for personal injuries received through the alleged joint negligence of the

said defendants. A trial was had in the circuit court of the city of St. Louis, which resulted in a judgment for the plaintiff for the sum of $20,000 against the defendant Railway Company, and a judgment in favor of the defendant Iron & Foundry Company, and against the plaintiff. The Railway Company appealed to this court from the former judgment, and the plaintiff appealed from the latter.

Because of the condition of the record in this case, it is necessary, in order to properly understand the questions presented for determination, to set out the pleadings on which the case was tried. The petition is as follows:

"The plaintiff by leave of court files his amended petition. The plaintiff states that defendant, Union Iron & Foundry Company, is and at the times herein mentioned, was a corporation by virtue of the laws of Missouri. That at said times defendant, St. Louis & Suburban Railway Company, was and is now a corporation by virtue of the law of Missouri, and occupied the premises and used and operated the poles, wires and electric current herein mentioned, for the purpose of conveying electricity to various wires as motive power. That electricity is a highly dangerous power when it has contact with a human body and very destructive to human life and limb, as defendants and each of them by their agents herein mentioned, well knew at the time herein mentioned. That on the 17th day of January, 1905, defendant, St. Louis & Suburban Railway Company, was maintaining on its premises at DeHodiamont and Maple avenues, on or near the dividing line between the city of St. Louis and county of St. Louis, about 180 feet north of Maple avenue, and between said defendant's power house and the tracks of the Wabash Railroad Company, a pole on which was strung five wires for the conveyance of large quantities of electric fluid as a motive power. That said feed wires were heavily charged with electricity;

that said pole on which said feed wires were strung
was so situated that persons were liable to be near
them and liable to be in contact with them and to have
objects with which they would work in contact with
said feed wires.

"That on said day the plaintiff was in the service
of the defendant Union Iron & Foundry Company, as
a laborer; that on said day the Union Iron & Foun-
dry Company was employed by the defendant St.
Louis & Suburban Railway Company, in the erection
of a coal lift or chute on said premises, and was on said
premises of said St. Louis & Suburban Railway Com-
pany engaged in said work at the invitation of said
St. Louis & Suburban Railway Company; that whilst
the plaintiff was in the due discharge of his said em-
ployment he was ordered by the foreman of his em-
ployer, the Union Iron & Foundry Company, to go up
said pole on which said feed wires were strung, for the
purpose of raising and adjusting a guy rope attached
to a gin pole so as to have said guy rope above said
feed wires; that said foreman had authority from his
said employer to command and control the plaintiff
as to the work he was to do and the manner of doing
the same, and to supply the means and appliances for
doing said work; that whilst the plaintiff was on said
pole engaged in said work the guy rope block came in
contact with a feed wire and became charged with
electricity from said feed wire, whereby said electric-
ity so coming from said feed wire through said appli-
ance shocked and burnt and permanently injured the
plaintiff upon his hands, legs and body, both of his
arms and hands, and the flesh, tendons, leaders and
muscles thereof were so burnt and injured as to perma-
nently destroy the use thereof. His left leg and the
muscles, flesh and tendons thereof were so burnt and
injured as to permanantly destroy the use thereof.
His right leg and the muscles, flesh and tendons thereof
were so burnt and injured as to permanently destroy

the use thereof; and plaintiff was otherwise burnt and injured upon his body, and his nervous system was shocked and wrecked, and he was injured internally. And plaintiff avers that said feed wires were defectively insulated; that the insulation thereof was old, burnt and rotten, and was wholly ineffectual to prevent the escape of electricity from said feed wires, and in such condition as to be a dangerous and destructive trap to persons working at and about them. That owing to said defective condition of said wires and their insulation, said electricity escaped therefrom and injured the plaintiff as aforesaid. That defendant, St. Louis & Suburban Railway Company, was negligent in maintaining said feed wires in such dangerous condition where plaintiff was invited to be at and work about his said work by said defendant, which said negligence of said defendant directly contributed to cause plaintiff's said injuries.

"And plaintiff further avers that defendant Union Iron & Foundry Company by its foreman so in control of the plaintiff was negligent in ordering the plaintiff to do said work at and about said dangerous and defective wires, when by the exercise of ordinary care he would have known of said danger and of said defective and dangerous condition of said wires, and could have averted said injury to the plaintiff by the exercise of ordinary care, yet neglected to do so, and thereby directly contributed to cause said injuries to the plaintiff.

"That by said injuries the plaintiff has suffered and will suffer great pain of body and mind; has been maimed and crippled for life; and permanently disabled from labor; has lost and will lose the earnings of his labor; has incurred and will incur large expenses for medicines, medical and surgical attention and nursing; his health and strength is permanently impaired, to his damage in the sum of thirty thousand dollars, for which sum he prays judgment."

To this petition defendant Union Iron & Foundry Company filed its answer as follows:

"Comes now the defendant Union Iron & Foundry Company by its attorneys, and for separate answer to plaintiff's petition, admits that it is a corpration, organized as alleged in said petition, and admits that plaintiff was in its employ on the 17th day of January, 1905, but denies each and every other allegation in said petition contained.

"And for further answer defendant says that plaintiff received the injuries of which he complains by reason of his own want of ordinary care in allowing the block and tackle which he was hoisting at the time in question to come in contact with the electric feed wire of the defendant St. Louis & Suburban Railway Company, at the time and place in question.

"And for further answer defendant says that plaintiff knew, or by the exercise of ordinary care might have known, of the condition of said wire at the time and place in question, and was in a better position and had better opportunity to know of such condition than had this defendant's said foreman, and that as far as this defendant is concerned plaintiff assumed the risk of injury therefrom in undertaking the work which he was then and there engaged in doing. Wherefore, having fully answered this defendant prays to be dismissed hence."

The defendant Railway Company filed its amended answer to said petition, which is as follows:

"Comes now the St. Louis & Suburban Railway Company, one of the defendants herein, and for his answer to plaintiff's amended petition and the allegations therein contained, denies each and every allegation thereof.

"And for further answer and defense to plaintiff's amended petition and the allegations therein contained, this defendant avers and charges that whatever injury, if any, plaintiff incurred at the time and place

mentioned in his petition, was the result of his own carelessness and negligence and not the fault of this defendant, the St. Louis & Suburban Railway Company.

"And for further answer and defense to plaintiff's petition and the allegations therein contained, this defendant avers and charges that whatever risk there was, if any, in doing the acts set forth by plaintiff in his amended petition as therein done by him and ordered to be done by the Union Iron & Foundry Company, the co-defendant herein, was then and there unknowingly assumed by the plaintiff, and said acts were unnecessary to be done in the discharge of plaintiff's duties, if any.

"And for further answer and defense this defendant avers and charges that the condition of the wire, if as described in plaintiff's amended petition, was open, palpable and visible to, and well-known by plaintiff at the time and place where plaintiff did the alleged acts set up by him in his amended petition, and that said acts as alleged to have been done by plaintiff and as alleged to have been commanded to be done by the Union Iron & Foundry Company, co-defendant herein, were unnecessary acts, and were done without precaution on the part of plaintiff, if at all, and whatever injury, if any, was sustained by plaintiff growing out of the matters in his petition described, was the result of plaintiff's assumption of risk, if any, therein assumed, and not the result in any measure of the negligence of the St. Louis & Suburban Railway Company, one of the defendants herein.

"Wherefore, having fully answered this defendant asks to be dismissed with its costs in this behalf expended."

The reply to the separate answer of Union Iron & Foundry Company was a general denial. And the reply to the separate answer of defendant St. Louis & Suburban Railway Company was a general denial.

The following statement of the case made by counsel for appellant is a brief, clear and correct statement thereof, as disclosed by this record:

"The action was to recover for personal injuries sustained by the appellant while on the premises of the St. Louis & Suburban Railway Company, as an employee of the respondent Union Iron & Foundry Company, which was engaged in the erection of a coal chute or structure for the St. Louis & Suburban Railway Company.

"On the premises of the owner St. Louis & Suburban Railway, located in proximity to the structure so being erected, the St. Louis & Suburban Railway Company at the time was maintaining poles and wires, the latter heavily charged with electricity used as the motive power for drawing street railway cars operated by said railway company. These wires so charged with electricity were located on cross-arms on poles about twenty feet above the surface of the ground. And in the work of the erection of this coal structure in question it was necessary to pass guy ropes over and under the wires so charged with electricity, and in the work of so passing guy ropes under and over the wires so charged with electricity it was necessary for the employees, including this appellant, as the servant of the Union Iron & Foundry Company, to be on said cross-arms on said poles, and haul said guy ropes up in close proximity to said wires so charged. Said wires so charged with electricity were insufficiently insulated to prevent the electricity passing thereon from escaping therefrom upon contact with an object that would conduct the current of electricity.

"In this condition of the premises the plaintiff, in the employ of the respondent Union Iron & Foundry Company, at and about the work of erecting said coal structure, was on said premises on the 17th day of January, 1905, when he was ordered by the foreman of his employer, Samuel Armstrong, to ascend a pole on

which there were a number of wires charged with electricity, for the purpose of raising a guy rope over said wires to secure a gin pole used in the construction of said coal structure. In obedience to said order of said foreman Armstrong, this appellant climbed up said pole and stood upon the cross-arms and wires whilst engaged in the work of raising the guy rope for the purpose of passing it over the wires.

"The wires were covered with a material that appeared to be insulation, and with such appearance appellant assumed that they were properly insulated and that there was no danger from contact, either of his person or the guy rope therewith.

"The method of raising the guy rope was by lowering a line to the ground, and when the line was attached to the guy rope at the ground appellant was to raise the guy rope up to be passed over the wires.

"The guy rope had metal blocks, and as the appellant stood with his feet on the wires raising the guy rope, a part of the guy rope, a block, came in contact with a wire and the body of appellant thus formed a circuit through which the electricity escaping from one wire passed to the other wire, causing the plaintiff to sustain a terrific electric shock, whereby he was caused to fall upon the wires and to be shocked and burned so that both of his hands and wrists were virtually destroyed and his legs were so burned as to lame him for life. The injuries were such as to make him a helpless cripple for life, but, as in the case before the court on this appeal, the extent of the injuries is not in question, the above is deemed a sufficient recital thereof.

"The scene of this tragedy was at a point between the power house of the St. Louis & Suburban Railway Company and the Wabash Railroad Company, near DeHodiamont and Maple avenues, in the city of St. Louis, and near the division line between the city of St. Louis and the county of St. Louis.

"The bill of exceptions in this case concedes that there was evidence offered by the plaintiff tending to prove all the allegations of the petition as against this respondent.

"That there was evidence offered by respondent tending to contradict all the evidence offered by the plaintiff against the respondent, and also evidence tending to prove the affirmative allegations of its answer as to appellant, and that there was evidence offered by appellant-plaintiff tending to disprove all the affirmative allegations of respondent's answer, so that this cause stands before this court on this appeal upon the issues as to the correctness of the instructions given by the trial court, as between this appellant and respondent."

I. The only questions presented by this record for determination are propositions of law, involving the action of the trial court in giving certain instructions at the request and on behalf of the respondent

Counsel for respondent makes some criticism of the record for not preserving and bringing up the evidence of the case. In answer to that criticism, it is sufficient to state that according to rule six of this court it is not necessary to preserve the evidence where the object of the appeal is to have this court review simply "the action of the trial court in giving and refusing instructions." In such cases it is sufficient for the bill of exceptions to show that the evidence offered by the plaintiff tended to prove all the allegations of the petition; and that the evidence offered by the defendant tended to contradict all the evidence offered by the plaintiff, and also tended to prove the allegations of the answer; and that plaintiff offered evidence tending to disprove all of the allegations of new matter contained in the answer, etc. The bill of exceptions as disclosed by this record complies almost literally with this rule. We, therefore, pay no fuurther attention to the criticism made.

II. The first error assigned by counsel for appellant assails the soundness of the legal proposition stated in instruction numbered five given by the court on behalf of the respondent. That instruction reads as follows:

"The court instructs the jury that if you find from the evidence that the foreman, Armstrong, of the defendant, the Union Iron & Foundry Company, had no actual knowledge of the condition of the electric feed wire, with respect to its insulation and with respect to its dangerous condition, and had not been informed of the same, if you find from the evidence such was the condition, and had no better opportunities than had plaintiff himself to acquaint himself with its condition, then your verdict should be for the defendant, the Union Iron & Foundry Company."

Counsel for appellant contend that this instruction is erroneous, in that it "absolves the master from the duty of inquiry and inspection to ascertain the condition of the wires in question, and places the master and servant on the same plane with respect to ascertaining the condition of the place where the servant is required to work."

There is no question but what this instruction imposes the same degree of duty upon the master, the respondent in this case, and the servant, the appellant, in ascertaining the condition of the wires which caused the latter's injury. Is that the law?

The petition alleges that while acting within the scope of his employment and under the orders of respondent's foreman, he ascended the pole in question for the purpose of passing a guy rope over the wires strung thereon, and while so doing he received the shock of which he complains. While the petition does not state that the pole and wires in question constituted a part and parcel of the premises on which he was required to work, yet it does state that they were owned by and maintained upon the premises of the

Railway Company, who was having the chute erected so near thereto that persons working on the said chute, as well as the instrumentalities with which they were working, were liable to come in contact with those wires and be injured thereby. There was evidence introduced tending to prove those allegations of the petition.

Under that state of the record, while said pole and wires constituted no part of the physical place where appellant was required to work, yet it was so close thereto as to constitute a menace thereto, and rendered the place unsafe and dangerous to all persons who might work there. Under those conditions we held in the case of this same plaintiff against said Railway Company, on the latter's appeal (opinion just handed down, *ante,* page 396), that it was its duty to have notified both this appellant and respondent of the dangerous condition of those wires, and that it owed to both of them the highest degree of care to keep said wires in a safe condition.

If we were right in that holding, then necessarily when the Railway Company let the contract to build the coal chute to an independent contractor, he and his sub-contractor stepped into the shoes of the Railway Company and were required to construct the chute menaced with the same attending dangers that would have surrounded the Railway Company had it erected the chute itself instead of the contractor and sub-contractor.

With these preliminary observations, we return to the consideration of the instruction in question. Restating the question, did the master and servant in this case stand upon the same plane with respect to ascertaining the condition of the place where the servant was required to work?

It is elementary law, that it is the duty of the master to exercise ordinary care to furnish the servant a

reasonably safe place in which to work. [Dayharsh v. Railroad, 103 Mo. l. c. 576; Herdler v. Buck's Stove Co., 136 Mo. l. c. 16; Doyle v. Trust Co., 140 Mo. l. c. 10; Burkard v. Rope Co., 217 Mo. l. c. 481.]

It is equally academic that this duty of the master was imposed upon its vice-principal, Armstrong, the foreman in charge of the work, and whose orders appellant was obeying in ascending the pole and adjusting the guy ropes. And the foreman's order to the appellant to ascend the pole and do the work designated was an assurance that the place was reasonably safe for that purpose. [Sullivan v. Railroad, 107 Mo. l. c. 78.] There, it is said: "And having given the plaintiff the original assurance that the staging was safe, the fact that Prather was present and ordered and superintended the removal of the last section of the roof when the accident occurred was tantamount to a tacit assertion that it was safe for plaintiff to proceed with the removal of that section, and plaintiff was not bound to search for danger, but had a right to rely upon the judgment and discretion of the defendant's foreman that he would fully perform the measure of his duty towards him. The plaintiff, indeed, knew to a certain extent of the defect in the tie-beam, but he did not know of the danger to which he was subjected by reason of the defect, which Prather did or would have known, had he discharged his duty in this regard. These principles are recognized in the somewhat recent case of Bowen v. Railroad, 95 Mo. 277, although they were not directly involved. See the cases there cited, especially Arkerson v. Dennison, 117 Mass. 407; also Wood, Mas. & Ser. (2 Ed.), secs. 354, 376."

And in Bane v. Irwin, 172 Mo. l. c. 316, this court said: "The plaintiff did not assume the risk to which he was exposed by the negligent order of his forman. The plaintiff's evidence tended to prove that the foreman had lighted the third shot, but had told the plain-

tiff he had not done so; that plaintiff left the foreman in the immediate vicinity of the third shot, and that plaintiff had every reason to rely upon what Gibbs, the foreman, told him, and that the foreman, without waiting for the shot to explode, ordered plaintiff back into the dangerous place. As said by Judge SHERWOOD in Sullivan v. Railroad, 107 Mo. l. c. 78, the fact of the presence of the ground foreman and his order to plaintiff was tantamount to an assurance that it was safe for plaintiff to go back into the mine, and plaintiff had a right to rely on the judgment of the foreman that he would perform his duty to him, and especially is it applicable in this case, where plaintiff knew there were only three shots prepared and two had exploded. When he received the assurance of Gibbs, who was last at the shots, that he had not fired the third, it was entirely reasonable for him to act upon the assumption that it was safe to return and fire the shot as directed by the foreman. Plaintiff did not assume the risk of this danger which his foreman was bound to know, and which he did not know. The two men were not on equality either in service or opportunity to know the hazard of the undertaking.''

The same principle is restated in the case of Herdler v. Buck's Stove & Range Co., supra, page 17.

We do not understand counsel for respondent to controvert the correctness of the law as before stated, but insist, as we understand them, that the rule as there announced is not applicable to the facts of this case—their contention being that, because the record discloses the fact that the pole and wires were not on the premises where appellant was required to work, the respondent had no authority or control over the same, and consequently had no right to go upon the pole and wires for the purpose of making an inspection of them.

This contention in our opinion is unsound, for the reason that the dangers which make the place where

the servant is required to work unsafe need not constitute a part and parcel of the place itself, but the danger may, as is often the case, be separate and independent of the place itself, yet so near thereto as to make it reasonably certain that persons while working there are liable to come in contact with said near-by danger and be injured thereby.

The test is not that the place within itself is reasonably safe, but it must be reasonably safe from all internal and external dangers which are liable to do injury to the servant. It might be that the building, for instance, in which the servant is required to work is unusually strong and has no inherent defects or dangers whatever, yet who would for one moment contend that the same building would be a reasonably safe place for people to work if on the adjoining lot there stood a much larger and taller building so weakened by storm or fire that it was on the very verge of falling on the smaller? Certainly not, and this court has so held, if my memory serves me correctly, in a case that came from St. Louis, but I have been unable to lay my hands on it at the present time.

The same principle underlies this class of cases that underlies all others where reasonable care must be exercised in furnishing reasonably safe places for the use of the public and for all persons who have the right to be upon the premises.

For instance, in the case of Bassett v. The City of St. Joseph, 53 Mo. 290, this court held that municipal corporations were bound to keep their streets in a reasonably safe condition, and, failing to do so, they would be liable for all injuries resulting from their negligence. In that case the defect was not in the street, but consisted of an excavation adjacent thereto, the close proximity of which to the street made it dangerous for persons passing along there. The court said that the liability of the city "for damages caused by excavations is not restricted to cases where they act-

ually extend into the street; if travel is thereby rendered dangerous, the authorities are equally bound to protect the public, whether they encroach on the highway or not.'' That case has been followed in a long list and in a great variety of cases. The city in that case had no more control over the excavation there in question than the respondent here had over the pole and wires. In fact, not so much, for the reason that when the Railway Company made the contract with Stewart & Son to construct the coal chute, by implication it agreed that the contractors and sub-contractor, the respondent, and their employees, might go upon its premises and do all things that were necessary to accomplish that purpose. And the law imposed the duty on the Railway Company to use no dangerous agencies in or about the premises that would injure or kill such employees while so engaged within the scope of their employment.

In discussing this question this court in the case of Ryan v. St. Louis Transit Co., 190 Mo. l. c. 633, said: ''It is to be noted that there were no contractual relations between the deceased husband of the plaintiff, and the defendant Transit Company, but it is undisputed that the deceased was upon the premises of the company with its knowledge and consent, and to do a work for which the company had contracted with the employer of the deceased. When the defendant company made its contract with the Cullen & Stock Heating and Ventilating Company to install the oil system in the defendant's power house upon plans and specifications prescribed by itself, it knew and was bound to anticipate the necessity under which the Heating and Ventilating Company rested of sending its employees upon its premises for the purpose of installing the pipes upon which the deceased was working when he was killed, and hence the duty devolved upon the defendant of keeping the electrical wires, near which the deceased was required to work in the performance

of his duty in installing the oil pipes, so insulated and protected as to be safe for the deceased to work in their vicinity.''

The same ruling was also made in the case of Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, l. c. 674, and in Clark v. St. Louis & Suburban Railway Company, just handed down by this court, and reported at page 396 of this volume.

Under this contract with the Railway Company it became the legal duty of both the contractor, Stewart & Son, and the sub-contractor, the respondent, to make inquiry of the Railway Company and to inspect the premises and ascertain whether or not there were any such dangerous agencies connected with or about the premises as would render them unsafe for their employees while working in or about same. If they failed to do this, and there existed such dangerous agencies which rendered the premises unsafe, then they were guilty of negligence toward their employees, and would be liable in damages to any one of them who might be injured thereby. This is elementary, and is but another way of stating the rule, that the master must use reasonable care to furnish a reasonably safe place for his servants to work. [See case cited under former part of this paragraph.]

We are, therefore, of the opinion that the appellant and respondent did not stand on an equal footing regarding the duty to inspect the premises for secret or hidden dangers. That duty clearly rested upon the master, the respondent in this case, yet the instruction under consideration told the jury that respondent was under no greater duty to inspect the premises than was the appellant. That was clearly an erroneous declaration of the law, and the court erred in so stating it to the jury.

III. The next insistence of counsel for appellant is that instruction numbered seven given by the court

on behalf of the respondent is erroneous. That instruction reads as follows:

"The court instructs the jury that even though you may believe from the evidence in this case that it was dangerous for the defendant, the Union Iron & Foundry Company, to send its men up amongst the feed wires mentioned in the evidence, and to order them to pass its rope and tackle over said feed wires, still, if you believe from the evidence in this case that said danger was a hidden or secret one, and that no warning had been given to the defendant or its foreman, Armstrong, of such hidden or secret danger, and that said defendant, the Union Iron & Foundry Compan, had no knowledge of such danger, then your verdict should be for the defendant, the Union Iron & Foundry Company."

The vice of this instruction consists in the declaration that the danger was a hidden or secret one, and that no warning had been given to respondent or its foreman of such hidden danger, and that respondent had no knowledge of such danger, then the jury should find for the respondent. It will be observed by reading this instruction that it absolves respondent from all liability provided the danger in question was hidden and respondent had no personal knowledge thereof, and had not been informed of its existence, thereby totally ignoring all duty that rested upon respondent, or its foreman, to make an inspection of the premises and to inquire regarding all hidden or secret dangers that might be in or about the place where respondent's servants were required to work. This duty to inspect the premises by the master was quite fully considered in the previous paragraph, and what was there said need not be here repeated.

We are, therefore, of the opinion that this instruction was erroneous and should not have been given.

IV. The final contention of counsel for appellant is, that the court erred in giving for respondent instruction numbered eight, which reads as follows:

"The courts instructs the jury that a master in sending his servants to work upon the premises of another over which said master had no control, but said premises remain under the control of and in the possession of the owner, does not assume the responsibility to the servant for secret and hidden dangers, and that it is the duty of the owner of such premises to warn said master and his servants of such hidden dangers, and if the said owner does not warn the master or his servants of said danger, and if the master has no actual knowledge of said hidden or secret danger, then said master is not responsible or accountable for injuries to his servant or servants arising solely from said hidden and secret dangers."

As an abstract proposition of law the rule stated in this instruction may be sound, but when applied to the facts of this case it does not correctly declare the law applicable thereto, as has been repeatedly announced by this court.

We discussed this question fully in the second and third paragraph of this opinion, where it is held that where the danger is so near the place where the employees are required to work as to menace their lives or limbs, the duty rested upon the Railway Company to notify the contractor, and for the contractor or subcontractor to inspect and notify appellant of all secret or hidden dangers that might be known or discovered thereby. This instruction exempts respondent of that duty, and is for that reason erroneous. [Ryan v. Railroad, supra, l. c. 633; Geismann v. Missouri-Edison Electric Co., supra, l. c. 674; Clark v. Railroad, supra.]

We are, therefore, of the opinion that the judgment should be reversed and the cause remanded. It is so ordered.

All concur, *Graves, J.,* in result.

PER CURIAM.—The foregoing opinion of Wood-
son, J., written in Division One of this court, is adopted
by the Court in Banc.  All concur.