# J. A. Cash *v.* Casey-Hedges Co. *et al.*

## (*Knoxville.* September Term, 1917.)

1. **MUNICIPAL CORPORATIONS. Liability for torts of independent contractor.**

A municipality was not liable for death caused by fall of a smokestack being erected under contract, where such erection was not necessarily dangerous when done with care by persons having skill, and the municipality did not know the contractor was incompetent and did not control the methods or appliances of the contractor in performing the work. (*Post, pp.* 184, 185.)

Cases cited and approved: McHarge v. Newcomer, 117 Tenn., 595; Davis v. Lumber Co., 126 Tenn., 576; Powell v. Construction Co., 88 Tenn., 692.

2. **NEGLIGENCE. Duty to warn.**

Where, in the erection of a heavy smokestack by a gin pole and ropes and pulleys, there was danger of its falling, the erector was bound to warn every person near enough to be struck in case it fell. (*Post, p.* 185.)

3. **NEGLIGENCE. Discovered peril. Contributory negligence.**

Contributory negligence of a workman in working in a place apparently dangerous because near a heavy smokestack being erected in such manner that there was danger of its falling did not relieve the erector from liability for death of the workman by fall of the smokestack, where, knowing the workman's position, the erector proceeded with the work, constantly increasing the workman's peril; such conduct by the erector being willfulness or wantonness. (*Post, pp.* 185-188.)

Cases cited and approved: Railroad v. Williford, 115 Tenn., 122; Whirley v. Whiteman, 38 Tenn., 619; Ga. Pacific R. Co. v. Lee, 9 So., 233; Westborne Coal Co. v. Willoughby, 133 Tenn., 257; Todd v. Railroad, 135 Tenn., 92.

4. **MASTER AND SERVANT.** Safe place to work. Assurance of foreman.

Where the employee of one contractor, apprehensive of danger of falling of smokestack being erected by another contractor near his place of work, continued at work on being told by his foreman that it was safe, his employer was liable for the workman's death by smokestack's falling, notwithstanding the accident was primarily due to negligence of a third party, over whom the employer had no control; the workman having the right to rely on the foreman's statement as an assurance that his employer had furnished him a safe place to work. (*Post,* *pp.* 188-203.)

Cases cited and approved: Railroad v. Hayes, 117 Tenn., 680; C. & I. R. R. v. Russell, 91 Ill., 298; Erslew v. Railroad et al., 49 La. Ann. 86; Chattanooga v. Powell, 133 Tenn., 137; Channon v. Sanford Co., 70 Conn., 573; McGuire v. Bell Tel. Co., 167 N. Y., 208; Lindgren v. Williams, etc., Co., 112 Minn., 186; Clark v. Union Iron & F. Co., 234 Mo., 436; Foster v. Walker Roofing Co., 139 Ga., 431; Wilson v. Valley Improvement Co., 69 W. Va., 778; Riley v. Tucker, 179 Mass., 190.

Cases cited and distinguished: Clark v. Union Foundry Co., et al., 234 Mo., 451; Griffith & Sons Co. v. Brooks, 197 Fed., 723; Raxworthy v. Heisen, 274 Ill., 398; Hughes v. Malden, etc., Co., 168 Mass., 395.

FROM LOUDON.

Appeal from the Circuit Court of Loudon County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Sepreme Court.— SAM C. BROWN, Judge.

PENLAND & OGLE and J. E. CASSADY, for Cash.

Cash v. Casey-Hedges Co.

BREAZEALE & BREAZEALE and WEBB & BAKER, for Lenoir City.

SIZER, CHAMBLISS & CHAMBLISS, for Casey-Hedges Co.

CHAS. H. SMITH and CHAS. T. CATES, JR., for J. B. McCrary Co.

MR. JUSTICE FENTRESS delivered the opinion of the Court.

This action was brought by the administrator of G. W. Cash, who was fatally injured by the fall of a smokestack, against Casey-Hedges Company, J. B. McCrary Company, and the town of Lenoir City, to recover damages for the alleged negligent killing of the intestate. At the close of the plaintiff's evidence the trial judge directed the jury to find a verdict for all the defendants, and the plaintiff appealed to the court of civil appeals, where that judgment was affirmed as to Lenoir City, and reversed as to the other defendants.

The town of Lenoir City contemplated the erection of a water and sewerage system, and employed the J. B. McCrary Company to act as engineers and to superintend the construction of same for which it was to have been paid a percentage of the cost. The municipality also entered into a contract with the Casey-Hedges Company, whereby the latter agreed to furnish and erect for it two boilers

and a smokestack. After the work had progressed to some extent, the contract between Lenoir City and McCrary Company was changed so that the latter undertook to complete the then unfinished portion of the improvements. However, the McCrary Company did not, in any respect, control the manner in which the Casey-Hedges Company did its part of the work.

On the day he was killed, the deceased was employed as a brick mason by the McCrary Company, under its foreman Wilson, in building a wall around the two boilers which had theretofore been erected by the Casey-Hedges Company. At about twenty-five feet from the place where Cash was laying brick, the Casey-Hedges Company, through its foreman Hannah and his laborers, was endeavoring to erect, upon a foundation constructed for the purpose, a smokestack sixty feet long and four feet in diameter, the weight of which was approximately 4,000 pounds.

At the time of the accident, Hannah and his men were elevating the smokestack to a vertical position, by means of what is called in the record, a "gin pole," to which was attached a pulley, through which ran a rope, and at the end of the rope there was an iron or steel hook. A rope had been tied around the stack, and to this rope the hook was attached, and it was proposed to lift the smokestack from the ground by pulling upon these ropes. It is stated in the record that by reason of the fact that the gin pole was too short, it was necessary to place the rope, which went

around the stack, between the middle and the lower end of the stack. In order to keep the upper end of the stack from overbalancing the lower end, the center of gravity being below the middle of the stack, iron doors and beams, weighing about 1,000 pounds, were attached to the lower end of the stack, making its entire weight, with attachments, about 5,000 pounds.

Cash was employed that morning one hour and twenty minutes before the accident occurred which resulted in his death. When he went to the place to go to work, one end of the smokestack was on the ground and the other was on an elevation ten or twelve feet high. He observed what was contemplated to be done, and remarked to one Long, another bricklayer, that it looked ''a little risky.'' ''I reckon they know their business or we would not be here working.'' The proof shows that perhaps an hour after this, Hannah, the foreman of Casey-Hedges Company, in speaking to his crew, said: ''Look out, boys; there is no telling what might happen.'' The record does not show that Cash heard this warning, nor does it appear that Hannah notified him otherwise of the danger. However, about twenty minutes before the stack fell, and perhaps when most of the weight of the stack was upon the equipment, Cash became apprehensive, and stated to Wilson, the foreman of his employer, that he thought what was being done was dangerous. Evidently the situation justified apprehension, as one of the witnesses in the record testified that he had gone to the place for the purpose

of obtaining employment, but, when he saw the situation, he did not ask for a job, because he thought the place was dangerous. In response to the statement of Cash that he thought what was being done was dangerous, Wilson replied that it was safe, and thereupon Cash resumed his work.

About twenty minutes after this conversation occurred the stack fell, inflicting injuries upon Cash, from which he died. The fall was caused by the breaking of the hook. An inspection of the hook, after the fall, showed that there was an old defect in it. It is improbable, however, that it would have held the weight put upon it if it had not been defective, as one of the witnesses, having some knowledge of such matters, testified that it was one inch in diameter, and that the capacity of such hooks was 2,000 pounds.

The plaintiff has filed a petition for *certiorari,* and assigns error to the action of the court of civil appeals in affirming the judgment as to Lenoir City; and J. B. McCrary Company and Casey-Hedges Company have likewise filed petitions for *certiorari,* and assigned error to the action of the court of civil appeals in reversing the judgment of the circuit court. All of the petitions were granted, and the case was argued in this court.

As to Lenoir City, we think the suit should have been dismissed.

We cannot say that the erection of smokestacks, similar to the one in this case, is necessarily dangerous, when done with care by persons who have skill

in such matters, and the record does not show that the municipality knew Casey-Hedges Company was incompetent, or that it controlled the methods or appliances adopted by the latter in performing the work. *McHarge* v. *Newcomer,* 117 Tenn., 595, 100 S. W., 700, 9 L. R. A. (N. S.), 298; *Davis* v. *Lumber Co.,* 126 Tenn., 576, 150 S. W., 545; *Powell* v. *Construction Co.,* 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925.

As to Casey-Hedges Company it is quite plain that it was under the duty of warning every person sufficiently near to the stack to be struck in the event it fell. In 29 Cyc., 474, it is said:

"Where one is performing some act which is likely to be dangerous to persons in the vicinity, it is his duty to warn such persons of the danger;" furthermore, the "notice must be sufficient to apprise the persons notified of the danger."

The danger of the collapse of the stack increased as it was elevated. The fact that Hannah, the foreman of this defendant, told his crew to be on the lookout, as he did not know what might happen, shows that he feared the smokestack might fall. He knew that Cash was engaged in laying brick and not in a position to observe what was being done.

If it be admitted that the deceased was guilty of contributory negligence in working in a position which had the appearance of danger, still this will not excuse the defendant from liability where it constantly increased his peril, knowing that the deceased did not appreciate the danger and was not in a position

to avert the accident and its consequent injury. Such conduct is mildly characterized as gross negligence; it is rather willfulness or wantonness. What was said by this court in *Railroad* v. *Roe,* 118 Tenn., 611, 102 S. W., 343, is so apt here that we quote at some length from the opinion:

"In *Railroad* v. *Pugh,* 97 Tenn., 627, 37 S. W., 555, this was said: 'The rule at common law and in this State still is that any contribution to any injury which directly produced it would bar the action in any case where statutory provisions to the contrary do not apply.'   . . .

"This rule is entirely consistent with that other, under which a party will not be 'excused from liability for an injury which he inflicts on another on the ground of the earlier negligence of the latter, when, aware of the latter's exposure to peril, he omits ordinary and reasonable care to avoid the injury. When the observance of this care would have prevented the hurt, failure in that regard is actionable wrong. It is so, not only because such negligence is the proximate occasion to the injury, but for the stronger reason that it indicates wantonness, and for this the law affords no excuse.' *Railroad* v. *Williford,* supra [115 Tenn., 122, 88 S. W., 178;] *Whirley* v. *Whiteman,* supra [1 Head, 619]. In the first one of the cases last cited this court quoted with approval from an opinion of the supreme court of Alabama, in *Ga. Pacific R. Co.* v. *Lee,* 9 South., 233, 92 Ala., 270, as to the failure of a defendant to make an effort to avoid

an injury which he sees is imminent to the party who has been guilty of some negligence in placing himself in a perilous position, as follows: 'Such failure, with such knowledge of the situation and the probable consequences, and omission to act upon the dictates of prudence and diligence to the end of neutralizing plaintiff's fault and avoiding disaster, notwithstanding his lack of care, is, strictly speaking, not negligence at all; but it is more that any degree of negligence, inattention, or inadvertence. It is that recklessness or wantonness, or worse, which implies willingness to inflict the impending injury, or willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetrate a wrong.'

"Judge COOLEY, in the work already referred to, at page 674, on this point says: 'Where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of injury. The fact that one has put himself in a place of danger is never an excuse for another's purposely or recklessly injuring him. Even the criminal is not out of the protection of the law, and is not to be struck down with impunity by persons. If, therefore, the defendant discovered the negligence of the plaintiff in time by the use of

ordinary care to prevent the injury, and did not make use of such care for the purpose, he is justly chargeable with reckless injury, and cannot rely upon the negligence of the plaintiff as a protestation.'."

See *Westborne Coal Co.* v. *Willoughby,* 133 Tenn., 257, 180 S. W., 322; *Todd* v. *Railroad,* 135 Tenn., 92, 185 S. W., 62, L. R. A., 1916E, 555; *Railroad* v. *Williford,* 115 Tenn., 122, 88 S. W., 178.

We are of the opinion that the McCrary Company is liable for having failed to furnish its servant a safe place in which to work, notwithstanding the fact that the accident was due primarily to the negligence of a third party over whom it did not have control.

In Labatt on Master and Servant (2 Ed.), section 1028, it is said:

"Where the abnormal conditions which caused the injury are shown to have been originally produced by a cause for which the master was not responsible, the action is or is not maintainable, according as it may appear that he was or was not guilty of a subsequent and distinct breach of duty in having failed to ascertain the existence of these conditions, or in having omitted, after discovering them, to take such steps as might be appropriate for the protection of his servants. This principle is applicable where the abnormal conditions resulted from the act of a stranger."

This rule is illustrated by the case of *Railroad* v. *Hayes,* 117 Tenn., 680, 99 S. W., 362. The plaintiff was a brakeman in the service of the railroad, and

while riding on the ladder of a box car was injured by a chute which had been placed too near the track by a third party. It did not appear the defendant knew of the obstruction before the accident, or was negligent in not making inquiry. This court held the railroad was not liable.

In *C. & I. R. R.* v. *Russell,* 91 Ill., 298, 33 Am. Rep., 54, the defendant was held liable for injuries received by a brakeman who was knocked from the ladder of a box car by a telegraph pole which had been erected by a third party too near the track; it appearing the railroad knew the pole was too near the track.

In *Erslew* v. *Railroad et al.,* 49 La. Ann., 86, 21 South., 153, the railroad was held liable for the death of a brakeman who was knocked from the top of a box car of more than ordinary height by the wire of a trolley line stretched across the track. It was shown that the defendant knew that the wire was too low to clear a man on a high car.

We think Wilson, the foreman of McCrary Company, was culpable in telling the deceased that what was being done by Casey-Hedges Company was safe and that Cash had the right to rely upon this statement as an assurance that his employer had complied with his duty to furnish him a safe place in which to work.

In *Chattanooga* v. *Powell,* 133 Tenn., 137, 179 S. W., 808, this court held that where a servant became apprehensive of danger and was assured by his master that the place where he was working was safe, such

assurance was equivalent to a statement to the servant that the master has knowledge of the matter superior to that of the servant, and that the latter could rely upon the information given, unless the danger is so glaring that a man of ordinary prudence would not have continued to work.

It is insisted, however, that in *Chattanooga* v. *Powell*, the plaintiff was an ignorant laborer and the foreman was a man of experience, and that the right of the servant to rely upon the master's assurance of safety is based upon the latter's supposed superior knowledge. Furthermore, it is contended that Wilson was not presumed to have knowledge, superior to that of the deceased, about the competency of the employees of a third party and the sufficiency of the devices used by it, and that in assuring the deceased that what was being done by employees of Casey-Hedges Company was safe, Wilson exceeded the scope of his authority, and therefore did not bind his master. There is much force in this argument, but we cannot assent to a rule which would absolve the master from liability for injuries to his servant due to the negligence of a third party, which negligence would not have caused injury to the servant, but for the negligence of the master in failing to perform a duty he owed to his servant. Such a situation presents a case of concurrent negligence.

Wilson told Cash that what was being done was safe, yet the appearance of danger was sufficient to arouse apprehension. It is not shown that he made

inquiry as to the likelihood of the collapse of the stack and rigging or an inspection of the latter, with the view of ascertaining its adequacy to the strain put upon it. It was manifest that the deceased could not be on the lookout while performing his duties, and that he would likely be crushed if the stack fell.

In *Clark* v. *Union Foundry Co. et al.*, 234 Mo., 451, 137 S. W., 577, 45 L. R. A. (N. S.), 295, the electric street railway company in St. Louis contracted with Stuart & Co. to make certain improvements near its power plant. A contract for erecting a coal chute was sublet to the Union Iron Foundry Company, of which plaintiff Clark was an employee. In order to construct the chute it became necessary to erect a gin pole, and for that purpose the plaintiff was directed by his foreman to ascend a pole of the street railway company to which were attached cross-arms, upon which were defectively insulated feed wires. Plaintiff ascended the pole, and, without notice from the street railway company of the danger, was in the act of pulling a rope over the wires when he was shocked and sustained serious personal injuries. He did not know that the insulation was not sufficient to protect him. The foreman who directed him to do what he did was also ignorant of the fact that the insulation was insufficient. In a suit against his employer to recover for his injuries, the plaintiff obtained a judgment. The contention was made that as "the pole and wires were not on the premises where appellant was required to work, the respondent had no authority

or control over the same, and consequently had no right to go upon the pole and wires for the purpose of making an inspection of them.'' The court said:

''This contention in our opinion, is unsound, for the reason that the dangers which make the place where the servant is required to work unsafe need not constitute a part and parcel of the place itself, but the danger may, as is often the case, be separate and independent of the place itself, yet so near thereto as to make it reasonably certain that persons while working there are liable to come in contact with said nearby danger and be injured thereby. The test is not that the place of itself is reasonably safe, but it must be reasonably safe from all internal and external dangers which are liable to do injury to the servant. It might be that the building, for instance, in which the servant is required to work, is unusually strong and has no inherent defects or dangers whatever, yet who would for one moment contend that the same building would be a reasonably safe place for people to work if on the adjoining lot there stood a much larger and taller building, so weakened by storm or fire that it was on the very verge of falling on the smaller.''

In *Griffith & Sons Co.* v. *Brooks,* 197 Fed., 723, 117 C. C. A., 117, the plaintiff was employed to work in a building partially destroyed by fire. His master employed one Bishop, an independent contractor, to take down a portion of the walls. For this purpose Bishop installed a derrick upon the roof of an adjoining

Cash v. Casey-Hedges Co.

building. The derrick fell, causing the walls to collapse and injure the plaintiff. An inspection showed that the derrick was defective and not of sufficient strength to do the work which was attempted to be done with it.

In a suit against the master for injuries sustained by the plaintiff the court held the defendant was liable, and, in the opinion, said:

"In the view we take of the case, it is not important what the precise legal relations were that existed between Bishop and the company. The company caused the derrick to be brought there as one of the instrumentalities needed in the performance of its contract to restore the building. The company knew that the derrick stood on the west edge of the building next east of the injured buildings, and that the use of the derrick involved the swinging of the boom with its loads over them. It is manifest that, unless the derrick was securely fastened, such use of it was a menace to persons working within these fragments of buildings. In these circumstances and conditions, the company was carrying on the work within these fragments. As it seems to us, this case is not wholly conceived or stated when it is said that the effect of the relations between Bishop and the company was, as regards the installing and use of the derrick, to absolve the company from all responsibility to the plaintiffs. The controlling question is whether the company can escape the general rule that it is the master's duty to exercise due care to provide for his

139 Tenn.—13

servants a reasonably safe place in which to work. This rule is founded upon the master's possession and control of the premises in which he puts his servants at work."

In *Raxworthy* v. *Heisen*, 274 Ill., 398, 113 N. E., 699, it appeared that Raxworthy was employed by the defendant as a stonecutter. An independent contractor also employed by defendant, operated an elevator for the purpose of hoisting and placing stone in the building under construction. Raxworthy was directed to work near the elevator, and it fell and killed him. The proof showed that the wire cables suspending the elevator were rusty and defective and of insufficient strength to lift the loads put upon it.

In a suit by the administrator of the deceased the defendant was held liable. The court said:

"The question then presented is whether plaintiff in error owed his own servants the duty of using reasonable care to see that Shand, as an independent contractor, did not, by the negligent use of defective appliances in the performance of his work, make unsafe or dangerous the place where plaintiff in error's servants were required to work. . . . The plaintiff in error should have either required the defect remedied, or have moved deceased to a place to work where he would not have been exposed to the danger. An injury to plaintiff in error's employee as the result of the use of a defective cable might have been anticipated as probable, and that the master should be held liable in such case seems to us reasonable

and just. If the injury could not have been anticipated as the probable result of the use of the defective cables, a different rule would apply.''

In the last two cases the master may be said to have brought his servant and the independent contractor together, as he employed both of them to work at the same place; but this fact did not make him liable. Liability in both cases was predicated upon the master's breach of duty to his servant in failing to furnish him a safe place in which to work, and not upon the theory that he was liable for the negligence of the independent contractor.

The judgment of the court of civil appeals is affirmed.

LANSDEN, J., dissents as to the judgment dismissing the suit as to Lenoir City.

WILLIAMS, J., dissents from the judgment as to the J. B. McCrary Company.

WILLIAMS, J. (dissenting in part). My dissent is based upon the application of a doctrine, sound in many instances where injury is occasioned by the nearby operation of an independent contractor's equipment, to this case, where it appears that McCrary company had nothing to do with the selection, employment, or bringing to the premises of the Casey-Hedges Company. We have here two independent subcontractors under the town of Lenoir City. We have, then, the legal equivalent of the

McCrary Company being at work in the vicinity of a third party.

Labatt on Master and Servant, section 1069, states the true rule, which in my judgment should be applied to the facts of the pending case:

"An action cannot be maintained for injuries caused by the negligence of servants of the owner of premises adjoining those of the defendant, at all events, in the absence of evidence showing that the particular event which produced the injury ought to have been foreseen by him."

The approximation to consociation of the two crews not having been brought about by the McCrary Company, that company had a right to presume that the work of Casey-Hedges Company would be conducted in a skillful and safe manner.

"Where an employer's own servants are required, in the course of his business, to work in combination with other parties for the performance of something in which he and those parties have a common interest, it is not negligent for him to act on the presumption that they will exercise proper care." 3 Labatt, Mas. & Ser., section 929.

*A fortiori,* should this be true where the work is not in combination or in a common interest. A denial of the presumption and the imposition of a duty to inspect would in "the discharge of that duty take an employer widely beyond the scope of his business territorially as well as otherwise."

McCrary Company was not put to the employment of a foreman who was skilled in matters, such as the tensile strength of iron (the hook which broke), or in the intricacies or the hazards which were incident to the work of the Casey-Hedges Company.

Wilson as well as Cash did not hear the warning statement that Hannah addressed to the Casey-Hedges crew. He and his employer had no right to inspect the latter company's equipment, or to direct its time, place, or mode of work; nor was he held out by the McCrary Company as fit for such service.

So far as the proof shows, Wilson did not know of the crack in the hook, and did not promise to look out for and give warning to Cash, and what he said by way of assurance (not having back of him the right to inspect) was personal, and not official, so as to bind the McCrary Company. A vice principal must, to that end, be supposed to have knowledge, or from his position be chargeable with special knowledge, as to whether the place was safe. If Cash and Wilson were on a parity in the particular respect, a recovery cannot be awarded on account of the assurance. *Grey Eagle Marble Co.* v. *Perry,* 138 Tenn., 231, 197 S. W., 674. Cash had no right to infer that Wilson had made, or had power to make, an inspection of the equipment not under the McCrary Company's control.

In the last analysis, the case must turn upon the ability and legal duty of Wilson to leave his own job and go outside of his own designated sphere, fore-

man of bricklaying, and pass judgment on another and wholly distinct contractor's work.

The duty of the master to provide a reasonably safe place for the servant to work in is not absolute, and is not, ordinarily, applicable where the master neither has nor assumes possession, use, or control of the premises of a third person, or of that which tends to make the place unsafe. *Channon* v. *Sanford Co.,* 70 Conn., 573, 40 Atl., 462, 41 L. R. A., 200, 66 Am. St. Rep., 133; *McGuire* v. *Bell Tel. Co.,* 167 N. Y., 208, 60 N. E., 433, 52 L. R. A., 437; 18 R. C. L., 585. JAGGARD, J., in *Lindgren* v. *Williams, etc., Co.,* 112 Minn., 186, 127 N. W., 626, collects the cases, and says that the rule of non-liability has received general sanction.

The case of *Clark* v. *Union Iron & F. Co.,* 234 Mo., 436, 137 S. W., 577, 45 L. R. A. (N. S.), 295, is not so far an exception to this general rule as to be in point, as the majority conceives, for there the injured employee was ordered to go to and make use of the very spot where a highly dangerous agency was in existence, without any examination to see whether the electric wires were insulated; and the employee was shocked in a direct contact with that agency. In the annotation of the case (45 L. R. A. [N. S.], 297) it is demonstrated and stated that it is necessary to show that the injury was one which might have been anticipated by the master; and it appears that the Union Iron Company had such temporary control of the immediate place as that the duty to inspect

arose. The opinion is grounded on the existence of that duty.

That decision, even on its own facts, is directly opposed by *Foster* v. *Walker Roofing Co.,* 139 Ga., 431, 77 S. E., 581, and, if not distinguishable and justified by the fact that the wires were or might be supposed to be highly dangerous, is opposed by a long line of cases collated in the decision and note in *Wilson* v. *Valley Improvement Co.,* 69 W. Va., 778, 73 S. E., 64, 45 L. R. A. (N. S.), 271, Ann. Cas., 1913B, 791, where it is demonstrated that there is no duty to inspect, in case of ordinary appliances, premises or work of third persons.

In *Hughes* v. *Malden, etc., Co.,* 168 Mass., 395, 47 N. E., 125, Judge Holmes said, speaking of the right of plaintiff in fairly similar circumstances to rely upon his master to provide a safe place:

"As was manifest, and as the plaintiff must be taken to have known, the defendant had no control over the trench. He had a right to expect that, if the defendant knew of any danger which the plaintiff did not know and ought not to be assumed to know, it would inform him. But no such knowledge on the part of the defendant was shown. It does not appear to have known anything except what was visible to the eye, or to have been able or bound to infer from what was visible anything which the plaintiff with his experience was not equally able to infer. What more could it have done?"

Passing to a suggestion of a duty to inspect, it was said, fully answering the majority opinion on the same point:

"The only thing which we think of as possible is that the defendant might have inquired how long the ditch had been dug, as bearing on the chance of a fall, and then have told the plaintiff. But it seems to us that it would be more straightforward to require the defendant to insure the plaintiff than to allow a recovery to be based upon the omission of such an inquiry as an excuse for a verdict."

See, also, *Riley* v. *Tucker,* 179 Mass., 190, 60 N. E., 484.

Speaking to the feature of assurance of safety given in such circumstances, it was said in *Channon* v. *Sanford Co.,* supra:

"The question, on this part of the case, is whether, if no such duty rested on defendant by law, the facts found warrant the conclusion, as matter of law that it assumed such a duty. The strongest thing in the finding in favor of such a conclusion is the fact that the defendant assured the plaintiff that the staging would be entirely safe; but this fact, taken either alone or with the other facts found, clearly does not warrant any such conclusion as matter of law."

Lenoir City escapes liability because the work to be done was not inherently dangerous; and I think the McCrary Company ought not to respond if Wilson, in reliance on due care and skill on the part of Hannah and of the latter's employer, assumed

and gave assurance, in effect, that in his opinion they knew what they were doing. Cash himself but a few moments before had ventured his opinion to a co-laborer to the same effect.

The rule to be adopted may have a wide application. This is the only jusitfication for so full a statement of the grounds of dissent. In the construction of large buildings and in great public works, not merely two but several such independent crews must work in proximity. Can it be said where a steel building is in process of erection, and heavy steel is being lifted by intricate hoisting devices, by one employer, that a plumber who sends to work below his roughing-in force of three laborers with one of them in charge as boss, entirely competent to the simple task, must answer for that boss' opinion and assurance to one of his crew that there is no danger to be expected from the equipment or methods of the steel contractor engaged at work above? To say that, being ignorant, his duty is to withdraw his crew means that the two jobs cannot be carried forward at the same time, when as a practical problem they must be. The imposition of duty in that regard should be based on knowledge, actual or implied, not ignorance. It is unreasonable to impose on a contractor the duty of employing a foreman who is capable of gauging the operations of other contractors who use more intricate apparatus; and the majority view will so result, as I construe it.

In *McGuire* v. *Bell Tel. Co.*, supra, Chief Justice
PARKER in referring to such distinct subcontractors,
said:

"But if the respondent's contention be sound, the
person engaged by the owner to do the plumbing
would, under the rule requiring the master to use
reasonable and ordinary care to provide a safe place
for his workmen, be charged with the duty of inspec-
tion to see whether the [other] contractor had
properly constructed the foundation, and hence
chargeable in damages for injuries sustained by his
men because of the fall of the building. No one has
as yet presented such a claim to the court; but, if
this charge is to stand as a correct exposition of the
law, such claims will be presented in the future; for
in the vast and varied work of construction, in which
many independent contractors are engaged, each
will naturally, and in fact must necessarily, rely
upon the caution and care of others to guard against
destruction of property and of life."

Hannah thought that even members of his own
crew, who presumably were somewhat acquainted
with the details of the work, needed to be advised of
the risk. Unless or until Wilson was so warned, we
ought not to impute to him knowledge, there being
no proof that he in point of fact apprehended or
appreciated the danger. One of plaintiff's witnesses
says:

"You could not tell by looking at the rope, hook,
and other appliances which they were using whether
the place was safe or not."

It is further shown that Wilson as a part of the conversation stated that he thought is was not dangerous, saying "that is a brand new rope." He thus indicated clearly what his opinion was based on; and the rope stood the strain.

In my opinion the real and sole liability should fall on the Casey-Hedges Company because of the use by it of the cracked and defective hook.