# ROBERT BIDWELL, Respondent, v. C. N. GRUBB, Appellant.

St. Louis Court of Appeals. Argued and Submitted February 7, 1918. Opinion Filed March 5, 1918.

1. **MASTER AND SERVANT: Safe Place to Work: Changing Conditions Caused by Progress of Work.** Where a contractor's carpenter, on a building where brickwork was done by another contractor, was injured by giving way of wall erected by such other, the rule relieving the master from liability for unsafe place to work, where a building is in course of erection and conditions are constantly shifting, did not apply, where the brickwork in the wall had been laid on Friday, and the accident happened the following Monday, and where the only change in conditions was that caused by the progress of the carpenter's work.

2. ———: ———: **Changing Conditions Caused by Directions of Foreman.** Nor does this rule apply where the change in conditions is that caused by directions of the foreman changing the servant's manner of work, in consequence of which the servant is doing his work in the manner directed, which resulted in accident to him.

3. ———: ———: **Condition Created by Another Contractor.** Where carpenter on a building was injured by giving way of a brick wall erected by another contractor, his employer was liable, if by reasonable care he could have discovered the dangerous condition of the wall.

4. ——: ——: **Evidence of Possibility of Discovering Defects.** In action against his employer by carpenter, injured by giving way of brick wall erected by another contractor on building on which he was working, evidence *held* sufficient to show that ordinary careful inspection by his employer would have revealed defective condition of the wall.

Appeal from the Circuit Court of St. Louis County.— *Hon. Gustavus A. Wurdeman,* Judge.

AFFIRMED.

*Holland, Rutlege & Lashly* for appellant.

(1) The obligation of the master to furnish a reasonably safe place does not apply where the servant is upon premises that are under the exclusive control of a third party. Powell v. Walker, 185 S. W. 532; Troth v. Norcross, 111 Mo. 634; 26 Cyc., p. 1,109; Channon v. Sanford Co., 70 Con. 573; Hughes v. Gas Co., 168 Mass. 395; American Bridge Co. v. Bainum, Fed. Rep. 367; Robinson v. Railroad, 88 Vt. 129; Hallon v. Sprague Elevator Co., 37 N. Y. Sup. 175. (2) The obligation of a master to furnish a reasonably safe place does not apply where a building is in course of erection and conditions are constantly shifting. Armour v. Hahn, 111 U. S. 311; Meehan v. Railroad, 114 Mo. App. 396; Holloran v. Union Iron & Foundry Co., 133 Mo. 470. (3) It is incumbent upon the servant to establish that the danger of which he complains was known to the master, or, by the exercise of ordinary care, would have been known to him; and that the said danger could reasonably have been anticipated by the master. Brewing Assn. v. Talbot, 141 Mo. 674; Goodrich v. Railroad, 152 Mo. 222; Meifert v. Union Sand Co., 124 Mo. App. 491. (4) It was incumbent upon plaintiff to show that it was necessary for him to use the brick wall in question in order to do his work. This he failed to do. (5) The court erred in giving instruction number 1 at the instance of plaintiff. Said instruction is erroneous for the following reasons: (a) It requires a finding from

the jury that it was necessary for plaintiff to stand or rest on the top of the brick wall in question, when there was no testimony to that effect. It is erroneous to predicate a finding upon matters in reference to which there is no testimony. Stone v. Hunt, 114 Mo. 166; State v. Hope, 102 Mo. 110; Evans v. Interstate Co., 106 Mo. 50; State v. Brown, 145 Mo. 680; Wilkerson v. Eilers, 114 Mo. 245. (b) Because it requires a finding that defendant's foreman knew, or, by the exercise of ordinary care, ought to have known of the danger of the bricks in question giving way. There was no evidence upon which to base such a finding. See authorities cited under heading 3, supra. (c) Said instruction is erroneous because it ignores the testimony to the effect that the brick wall in question was under the control of the brick contractor and not under the control of the defendant. See authorities cited under heading 1, supra. (d) Said instruction is erroneous because it ignores the fact that the plaintiff at the time of his accident was working on a building in the course of construction, amid shifting conditions. See authorities cited under heading 2, supra. (6) The court erred in giving instruction number 2 at the instance of plaintiff. Said instruction is erroneous for the following reasons: (a) Because it requires a finding that it was necessary for plaintiff on the occasion in question to step or rest on the top of a brick wall. It is erroneous to predicate a finding where there is no testimony upon which to base it. See authorities cited under heading 5 (a) supra. (b) Said instruction is erroneous because it requires a finding that the brick wall at the place in question was loose and insecure, and defendant's foreman knew, or by the exercise of ordinary care would have known of its said condition. See authorities cited under heading 3, supra. (c) Said instruction is further erroneous because it disregards the testimony to the effect that the brick wall in question was erected by the brick contractor and was under his control, and not under the control of the defendant. See authorities

cited under heading 1, supra. (d) Said instruction is further erroneous because it ignores the testimony to the effect that the plaintiff was working upon an unfinished building, amid shifting conditions. See authorites cited under heading 2, supra. (7) The court erred in giving instruction number 3. at the instance of plaintiff. Said instruction is erroneous because it requires a finding that it was necessary for plaintiff to rest or step on the brick wall, when there was no testimony upon which to base said finding. See authorities cited under heading 5(a), supra. (8) The court erred in refusing to give instruction B offered by defendant. See authorities cited under heading 1, supra. (9) The court erred in refusing to give instruction C requested by defendant. See authorities cited under heading 1, supra. (10) The court erred in refusing to give instruction E requested by defendant. See authorities cited under heading 3, supra.

*Breckinridge Long* and *Frank A. Thompson* for respondent.

(1) It is elementary law that it is the duty of the master to exercise ordinary care to furnish a servant a reasonably safe place in which to work. Clark v. Iron & Foundry Co., 234 Mo. 436, 449; Dayharsh v. Railroad, 103 Mo. 569; Herdler v. Buck's Stove Company, 136 Mo. 16; Doyle v. Trust Co., 140 Mo. 10; Burkard v. Rope Company, 217 Mo. 481; Bennett v. Lime Co., 146 Mo. App. 573; Morgan v. Railroad, 136 Mo. App. 342. A. "The greater the hazard the greater the care." Woods v. Wabash R. R. Co., 188 Mo. 229. (2) It is equally academic that this duty of the master was imposed upon his vice-principal, Tom Reed, the foreman in charge of the work, and whose orders respondent was obeying in doing the sawing as he was doing it, and his orders to do the sawing as directed were assurance that the wall was reasonably safe for that purpose. Sullivan v. Railroad, 107 Mo. 66; Bane v. Irwin, 172 Mo. 317; Baxter v. Lumber Company, 186 Mo. App. 361; Clark v. Iron & Fdy. Co., 234 Mo. 436;

Morgan v. Railroad, 136 Mo. App. 342; Shortel v. City of St. Joseph, 104 Mo. 120; Bradley v. Railroad, 138 Mo. 306; Bennett v. Lime Co., 146 Mo. App. 575. (3) The duty of the master to exercise ordinary care to furnish the servant a reasonably safe place in which to work applies even though the premises where the servant is required to work are not owned by the master or under his authority or control. Clark v. Iron & Foundry Co., 234 Mo. 436, 451; Near v. St. Louis & San Francisco Railroad Company, 261 Mo. 80. (4) The duty on the part of the master to exercise reasonable and ordinary care applies particularly in this case, and the conditions are not constantly shifted in the erection of a building so as to relieve the master of this primary duty. Rowden v. Mining Co., 136 Mo. App. 387. (5) There was testimony that the defendant knew, or by the exercise of ordinary care, under the circumstances, could have known, that the mortar on the brick wall was defective. (6) In answer to point 4 of appellant's brief we contend that there was positive evidence to the effect that it was necessary for plaintiff to stand on the brick wall to do the sawing. (7) In answer to point 5 made in appellant's brief, we contend that there was abundant testimony to the effect that it was necessary for plaintiff to stand on the wall to do the sawing in the manner in which he was directed to do the sawing. There was also evidence that the brick wall was loose and insecure and that the mortar had no adhesive part to it, which was discovered upon a slight examination, by defendant, immediately after the accident. A minute examination of it, which we think ordinary care called for, under the circumstances, undoubtedly would have disclosed it before the accident. Woods v. Wabash R. R. Co., 188 Mo. 229.

REYNOLDS, P. J.—Action by plaintiff for damages for injuries sustained by the giving away of a wall on which plaintiff was partly resting while engaged in laying a subfloor on a building, the outer walls of which had reached to the third story, the top about

forty feet from the ground. Plaintiff's employer, the defendant, was the contractor for doing the carpenter work in connection with the erection of an addition to Lindenwood College in St. Charles. The general contractor for the work was the Westlake Construction Company and one Reinschmidt was contractor for erecting the walls. Plaintiff, who was an experienced carpenter, had been working on the building some six weeks or more at the time of the accident. As the work progressed on the building it was necessary for the carpenters to lay joists, these joists resting on the brick walls. The building in question ran east and west, the front to the east. Its width was from north to south. The joists ran north and south parallel to each other and about sixteen inches apart and were inserted in the north and south walls. At the time of the accident to plaintiff the joists for the third floor were in position, and plaintiff and other carpenters were engaged in laying a subfloor on them. This subfloor started at the southeast corner of the building and the boards composing it were laid diagonally, one end resting on the west wall, the other on the south wall. The planks of this subfloor were six inches wide. It was necessary to saw off the south end of each plank at right angles in laying them. At the time in question about fifteen of these boards in this subfloor had been laid, covering about ten feet of the joists from the corner. The usual way of laying these boards, it seems, was to nail them down, then mark off a line just inside the wall and saw off the ends. That was the way plaintiff had been doing the work, when the foreman of the job, who was immediately over plaintiff, came up to him and told him that he should saw the boards as he went along, where he was leaving them to just stick over the wall. To quote the exact language of the foreman, as testified to by plaintiff, the foreman told him not to lay the boards in the way he was doing it, but to go ahead and saw off each board as he went. Plaintiff testified that before that he had been leaving them stick over the wall and after a section of them

was laid he would then saw them off, but the foreman changed this by directing him to saw each board as he went along.

A witness for plaintiff, who was assisting plaintiff in the work, testified to practically the same thing, that is, that the foreman came around and told them to saw the boards as they went along, and after that they sawed one board at a time, holding it up and sawing it. This witness further testified that the usual way they had worked before the foreman had given them this direction, was to run it over and cut it after it was laid, standing on the top of the floor and cutting it; that doing it the way the foreman directed, however, plaintiff being right-handed, was obliged to rest his left foot or leg on the wall, kneeling with his right knee on the boards in place, as we understand it. It is very difficult to understand from the testimony whether plaintiff, when he was sawing off this board, had nailed it, or whether it was loose, but in the view we take of it we do not think that that is very material. The material fact in the case is, that the evidence on the part of plaintiff tends to show that in order to saw the board in the manner directed by the foreman, it was necessary for him to place one foot on the top of the wall so that his weight rested partly on that and partly on the knee of his right leg, which it appears was on the flooring. As to that the evidence is not very clear. At any rate, while the plaintiff was so engaged the top of the wall gave way, and he was precipitated to the ground, receiving the injuries of which he complains and on account of which he brought this action.

There are two acts of negligence charged in the petition in the following language:

"1. The defendant negligently failed to furnish and provide the plaintiff with a suitable, proper and safe place in which to work, in that said place where plaintiff was sent to do the said work, as aforesaid, was not a suitable, safe and proper place in which to carry on the work of sawing the boards as aforesaid,

inasmuch as the brick wall on which it was necessary, as aforesaid, for plaintiff to stand or kneel or rest was loose and unsafe, which the defendant knew, or by the exercise of ordinary care and diligence, could have known.

"2. Plaintiff further states that said place where he was ordered to work by defendant was dangerous, to the safety of plaintiff, by reason of the fact that plaintiff while in the exercise of ordinary care for his own safety, in doing said work, *as directed by the defendant,* was likely to fall from said wall, a great distance to the ground and to be injured by losing his balance on said wall, or slipping therefrom, or by the bricks on top of said wall turning under the weight of plaintiff's body; that defendant either knew or by the exercise of ordinary care ought to have known, of the dangers of said place in which he had ordered said plaintiff to do said work, as aforesaid. Plaintiff further states that his fall from said wall to the ground, and his subsequent injuries, were directly caused by the carelessness and negligence of the defendant in ordering the plaintiff to do said work in said dangerous place, as aforesaid." (Italics ours.)

At the conclusion of the testimony defendant offered an instruction in the nature of a demurrer, which was refused, defendant excepting. At the instance of plaintiff the court gave five instructions and gave a number at the instance of defendant. It refused four asked by defendant and of its own motion gave the usual instruction as to the number of jurors necessary to concur in a verdict.

The jury returned a verdict in favor of plaintiff for $3500, judgment following. Defendant, filing a motion for new trial, excepted to its being overruled and has duly appealed.

There were no formal assignments of error made by learned counsel for appellant but they have made and argued ten points.

The first and second are to the effect that the obligation of the employer to furnish a reasonably safe

place, does not apply where the employee is upon premises that are under the exclusive control of a third party, and that the obligation of the employer to furnish a reasonably safe place, does not apply where a building is in course of erection and conditions are constantly shifting. Taking up the last proposition first, while that is good law, it is not applicable here, for there is no evidence that the conditions were constantly shifting while this work was going on. The brick-work in the wall had been laid on Friday; the accident happened on the following Monday, so there was no change in the condition of the wall. If it is meant by this proposition that the conditions were changed by the fact that laying the several planks on this subfloor, that is not such a change in condition as is contemplated by the authorities cited and referred to. If it is meant by this that these were changed by the directions which the foreman gave, the answer is that it was in consequence of that order that the plaintiff was doing the work in the manner which resulted in the accident.

As to the first proposition, our court had very much the same contention made before it in Greenstein v. Christopher & Simpson Architectural Iron & Foundry Co., 178 S. W. 1179, not to be officially reported. That was an action against the defendant for injury to a painter, who had been employed by the defendant to paint some girders. It was in evidence that one of these girders had not been set properly by the bricklayers, who had the contract for the doing of the brickwork, and that in consequence thereof it had turned and thrown plaintiff, to his injury. We there held that the fact that defendant had nothing to do with the brick-work and that the ends of beams were to be bricked in after the contractor had placed them in position, could not relieve the defendant of its duty to exercise ordinary care to make the place reasonably safe for its employee engaged in painting such beams, as it was bound to use reasonable care to discover the dangerous condition of the beams, if any.

In Clark v. Union Iron & Foundry Co., 234 Mo. 436, 137 S. W. 577, our Supreme Court held it was the duty of the employer to inspect the premises about which his workmen were engaged under his direction and ascertain whether or not there were any dangerous agencies connected with or about the place where plaintiff was required to work that would render it unsafe. This duty to inspect for secret and hidden dangers rested upon the employer, and he is not absolved from liability to the workmen by the mere fact that the dangers were hidden and he knew nothing about them and they were not of his making, and that while it is the duty of the owner of the premises to notify the contractor employed to repair them, of hidden dangers, the contractor is not absolved from his duty to his workmen to inspect and notify him of such hidden dangers by the owner's failure to notify the contractor.

These decisions determine the first and second points made by learned counsel for appellant adversely to their contention.

The third point made by learned counsel for appellant is that it was incumbent upon the plaintiff to establish that the danger which he complains of was known to the employer, or by the exercise of ordinary care would have been known to him, and that the danger could reasonably have been anticipated by the employer.

The evidence in this case shows that even a casual inspection by the defendant of this wall which fell, would have demonstrated that it was not properly laid and was unsafe. A witness for plaintiff, who was working with him at the time, testified that immediately after the accident to plaintiff, the defendant came to the witness and asked him if he knew why or how it happened that plaintiff fell. Witness told him he did not and defendant said to him, "There may be gravel under this brick," and he called the witness over and together they examined the mortar where three or four bricks had fallen out, but found no gravel in it "Just crumbled it up in our fingers, and it was nothing much

more than sand," said the witness; could not find any gravel on top of the brick. The mortar was lime mortar. Said this witness, "You could pick it up in your fingers and crumble it up as you would that much sand. There was very little adhesive part to it than there would have been in the pure sand." This is certainly evidence sufficient to show that even the most casual examination would have developed the fact that the mortar with which these bricks were laid in this wall was not of the proper quality to make the wall safe. We therefore hold this third point made by learned counsel for appellant untenable.

The fourth proposition made by those learned counsel is, that it was incumbent upon the plaintiff to show that it was necessary for him to use the brick wall in question in order to do his work, and it is claimed that he had failed to do this. In connection with this same claim are the fifth, sixth and seventh points, which attack the first, second and third instructions given at the instance of plaintiff. The gravamen of the attack on the instructions is, that they required a finding by the jury that it was necessary for the plaintiff to rest or step on the brick wall in doing the work in which he was engaged, when there was no evidence to support this. We cannot agree to this. There was very substantial evidence to the effect that to carry out the instructions of the foreman as to the manner in which he should do this work, that is saw off the ends of the boards as laid or as being laid, and considering the situation, that it was necessary for plaintiff to rest his foot on this wall, and that to do the work as required by the foreman in any other way, would have involved the consumption of more time, or would have required plaintiff to place himself in such an awkward position that it would have been almost impracticable for him to have done the work. Learned counsel for appellant lose sight of the fact that in the second ground of negligence alleged, it is charged that "by reason of the fact that plaintiff while in the exercise of ordinary care for his own safe-

ty, in doing said work, as directed by the defendant, was likely to fall from said wall, a great distance to the ground," etc. Both in their argument and in their quotation of this second ground of negligence these counsel have inadvertently overlooked the above words which we have italicized in the second assignment of negligence, namely, that plaintiff was doing the work in the manner directed by the defendant. There was very substantial evidence that in doing it, as so directed, it was necessary for him to brace himself against this wall with one leg. We therefore hold that this point is not tenable.

It is further argued as against the correctness of the first instruction, that it requires the finding that the defendant's foreman, by the exercise of ordinary care ought to have known of the danger of the bricks in question giving way. This, it is argued, was erroneous because there was no evidence, it is claimed, upon which to base such finding. We have disposed of this contention above.

It is further argued against this instruction that it ignores the fact that the plaintiff, at the time of his accident, was working on a building in the course of construction, amid shifting conditions. This, we have also disposed of adversely to the claim of learned counsel.

The other points urged against the first and second instructions have been disposed of by what we have said before.

The eighth and ninth propositions or points made are to the refusal of the court to give three instructions asked by the defendant. The points sought to be covered by the first and second of these instructions are, that they asked the court to instruct the jury that if they believed and found from the evidence that the brick wall mentioned in the evidence was not designed or erected by the defendant, but was designed by the owner of the premises and erected by a brick contractor, and if they further believe and find from the evidence that the brick wall was not in possession

or control of the defendant then and in that case plaintiff is not entitled to recover and they should find their verdict for the defendant. Another instruction covered this same proposition in different language.

We have disposed of both of these points adversely to the claim of counsel for appellant in what we have said when referring to the point first made.

The third instruction which was refused, and on which refusal error is assigned, is to the effect that there was no evidence in the case that defendant either knew or by the exercise of ordinary care would have known that the brick wall mentioned in the evidence was defective. We have disposed of this adversely to the claim of learned counsel for appellant.

Finding no reversible error the judgment of the circuit court is affirmed. *Allen* and *Becker*, *JJ.*, concur.