JEREMIAH FLANIGAN v. KANSAS CITY SOUTH-
ERN RAILWAY COMPANY, Appellant.

In Banc, January 25, 1919.

1. **MASTER AND SERVANT: Before Work Hours.** If the relation of master and servant did not exist between plaintiff and defendant at the time he entered defendant's sand house and a stove fell and burned him, he cannot recover for his consequent injuries.

2. ————: **Arrival Ahead of Time at Place of Work: Unusual Route: No Previous Employment.** Plaintiff had worked in defendant's railroad repair yards, in which was a sand house, at which the men occasionally warmed themselves at a stove therein. He worked until February, when his foot was hurt, and resumed work on the 25th and quit on the 26th, and was told by the foreman to come back when his foot got well. On March 5th he was at the yards, but did not apply for work. Defendant provided cars by which workmen were carried, leaving their homes at six-twenty and arriving at the yards at seven o'clock, the hour for work. Plaintiff, on the morning of March 6th, took a street car fifteen minutes after five, and after leaving it walked a mile to the yards, arriving at fifteen or twenty minutes before seven. He did not apply to the foreman for his work card, as was customary, nor did he go to the wash house where his tools were, but went to the sand house to warm. No one was present, and he entered, and after he had stood by the stove for two minutes it fell against and on him, severely burning him. Defendant had no knowledge that he was at the sand house or in the yards, and had not been informed that he expected to report for work on that day. *Held*, that the relation of master and servant had not commenced and did not exist, and plaintiff cannot recover for his injuries, and the demurrer to the evidence should have been sustained.

*Held*, by BOND, C. J., and BLAIR and WILLIAMS, JJ., that the judgment should be reversed and the cause remanded.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

REVERSED.

*Cyrus Crane* and *Hugh E. Martin* for appellant.

On the entire evidence the plaintiff is not entitled to recover and a verdict should have been directed in defendant's favor. (1) The defendant did not owe .plaintiff the duty of master and servant in regard to the sand-drying stove in question; hence there was no negligence with respect thereto on defendant's part (2) Defendant had fully performed its duty with re. spect to furnishing plaintiff a place to warm himself. There was no failure on defendant's part in that respect, and hence no negligence in regard thereto. (3) The evidence was not sufficient to establish negligence on defendant's part. (a) No defects of any kind were shown and no failure to use usual appliances. American Brewing Association v. Talbot, 141 Mo. 684. (b) There was no evidence of defects or knowledge thereof on the part of the defendant. Strother v. Ry. Co., 188 S. W. 1102. (c) The case is not one of *res ipso loquitur.* Klebe v. Distilling Co., 207 Mo. 480; Removich v. Construction Co., 264 Mo. 43; McGrath v. Transit Co., 197 Mo. 97; Fuchs v. City of St. Louis, 167 Mo. 620; Beebe v. Transit Co., 206 Mo. 419. (d) The accident might have happened in several ways, but the evidence does not disclose a cause for which the defendant is liable. Beebe v. Transit Co., 206 Mo. 419; Patton v. Railway, 179 U. S. 658. ·(4) Nothing was proved except the occurrence of the accident and the resulting injury. This does not establish liability. Bohn v. Railroad, 106 Mo. 429.

*Atwood, Hill & Popham* for respondent.

(1) The sand house was habitually and customarily used by plaintiff and others in defendant's employ as

a place in which to warm in order to properly perform their duties. This use was made of it with the knowledge and consent of defendant's foremen. Therefore, the defendant owed to plaintiff the duty of exercising ordinary care to erect and maintain the stove and sand drying receptacle attached thereto in a reasonably safe condition. Jackson v. Butler, 249 Mo. 360; Behncke v. Mitchell Clay Mining Co., 189 Mo. App. 647; Brick Co. v. Fisher, 79 Kan. 580; Sugar Co. v. Riley, 50 Kans. 405; Boden v. Demolf, 56 Fed. 848. (2) Plaintiff did not erect the stove nor was he required to work with or about it, nor was he under any duty of inspection as to its condition. Therefore, the falling of the stove in the manner it did bespeaks negligence calling for explanation on the part of defendant. In such a case the doctrine of *res ipsa loquitur* applies. Jackson v. Butler, 249 Mo. 360; Myers v. City of Independence, 189 S. W. 821; Klebe v. Distilling Co., 207 Mo. 491; Thompson v. Railroad, 243 Mo. 351; Blanton v. Dold, 109 Mo. 74; Hamilton v. Railroad, 123 Mo. App. 624; Sackewitz v. Am. Biscuit Co., 78 Mo. App. 151; St. Clair v. Railroad, 122 Mo. App. 526; Mining Co. v. Railroad, 194 Mo. App. 40; Shuler v. Railroad, 87 Mo. App. 623; 3 Labatt M. & S. (2 Ed.), sec 1601, p. 4864, note 10. (3) Aside from the rule of *res ipsa loquitur* negligence may be inferred from the fact of the falling of the stove and the circumstances attending it and the use being made of this stove. Mulberry v. Telephone Co., 191 Mo. App. 124; Capehardt v. Murta, 165 Mo. App. 63. (4) The falling of the stove was not an accident in the legal sense of an unavoidable casualty. Moreover, accident is a defense which must be specially pleaded, which defendant failed to do. 29 Cyc. 580; C. R. I. & P. Ry. Co. v. Shaw, 63 Nebr. 380, 56 L. R. A. 341.

ROY, C.—Plaintiff recovered judgment for $9500 as damages for personal injuries, and defendant has appealed.

Plaintiff was a car repairer, and had at times worked for defendant in its repair yards at Kansas City. In those yards was a wash house where workmen kept their tools, and where there was a stove for their use when they desired to make a fire to warm. Near by was the foreman's office, where there was always a foreman in charge of the yards and workmen, and where, before going to work in the morning, the workmen applied for and received their cards for the day. There was also the sand house, in which there was a stove for drying sand. With defendant's knowledge and acquiescence, the workmen sometimes used that place to get warm.

Plaintiff testified that he was working for defendant until sometime in February, 1914, when he got his foot hurt, and did not work until on February 25th and 26th. When he quit on the last named day the foreman told him to come back when his foot got well. The wages for the last two days were not paid him until after his injury. One day after February 26th he was in defendant's yards and borrowed a quarter from one of the men, but did not apply for work.

Plaintiff lived at Eighteenth and Broadway, and the company provided cars and passes by which workmen, including plaintiff, were carried from near their homes to said yards, leaving Second and Wyandotte at 6:20 and arriving at the yards a few minutes before or after seven, the hour for work. Plaintiff testified that he did not take that route that morning, but that he took a street car about fifteen minutes after five; and that, after leaving the street car, he had over a mile to walk to his work. Arriving at the yards fifteen or twenty minutes before seven, he did not apply at the foreman's office for his work card, nor did he go to the wash house where his tools were, but went to the sand house to warm. There was no one there. The night man in charge of the sand house usually left about six or half past. Plaintiff entered the sand house and stood by the stove about two minutes when it fell against

and on him, bruising and burning him, whereby he suffered severe injuries, practically losing the use of one arm and hand.

Defendant asked an instruction in the nature of a demurrer to the evidence, which was refused.

This is a very unusual case. The English case, Sharp v. Johnson & Co., 2 K. B. 139, decided in 1905, comes nearer to it than any other we can find. In that case the workmen, including the plaintiff therein, went daily by train from London to the country where they worked, arriving twenty minutes before the work began. Each was required to deposit a ticket at the office before time to begin work. It was a custom, known to the defendant, for the men to eat at a mess cabin on the premises before going to work. The plaintiff in that case, while on his way to deposit his ticket, fell into an excavation and was injured. It was there said, p. 147:

"This is not the case of a man hanging about his employers' premises during an unnecessarily long period before work commences. The applicant, with other workmen, had to come down from London by an early train which brought them to the place of employment about twenty minutes before the time for actually beginning work. The employers seem to have been aware of this and they had provided a mess cabin on the works at which the men employed could obtain refreshment, and which appears to have been open between 6:05 and 6:30 A. M. There was abundant evidence that, although, strictly speaking, it was the duty of the workmen to put their tickets in the slot at the office within three minutes from 6:30 A. M., it was the common practice of the men, when they arrived by the early train from London, to put their tickets on the ledge in front of the pigeon-hole, in order that the time-keeper might take them thence, as he habitually did, on his arrival at the ticket office at 6:30. There is no doubt that only a reasonable margin before the time of commencing actual work can be considered as coming within the period of employment, but it must, I

think, cover an interval during which, as in this case, with the knowledge and consent of the employers, the workman was permitted to be upon the premises for the purpose of depositing his ticket and then proceeding to the mess cabin provided by them in order to procure refreshment.''

In Milwaukee v. Althoff, 156 Wis. 68, the court cited the English case above mentioned and said, p. 71: ''In the instant case, when the servant reported to his foreman and received his instructions for the day and proceeded to carry out these instructions by starting for the place where he was to work, the relation of master and servant commenced, and that in walking to the place of work the servant was performing a service growing out of and incidental to his employment.'' It was also there said: ''The courts very generally hold that the relation of master and servant exists when the servant is under the master's control and subject to his direction.''

There are several things which cannot be overlooked in this connection. Plaintiff was not regularly at work for defendant. He had not worked for more than a week. Defendant had not been notified that plaintiff would come to work on that day, nor did it know that he was there. The last time that plaintiff was previously in the yards he was not there to work, but was apparently spending his time otherwise. When he came that morning, it was not by the usual means of travel furnished by defendant, nor did he get there at the usual time, but earlier, fifteen or twenty minutes before time to go to work. He certainly was not an employee of defendant from February 26th to that day, and he had done nothing on March 6th to renew that relation except to come to the yards in the manner above stated.

When a workman day after day presents himself at the same place and at the same time for work, it may be presumed that both parties contemplate that the relationship shall begin in the usual way and at the usual time on each day. But, in this case, if

plaintiff was the employee of defendant for that day, he became such by his own act of coming there as he did, and without the knowledge of defendant that he was there, and without any expectation of defendant that he would be there on that day. Defendant's other workmen took the cars furnished by defendant and arrived at the yards a few minutes before or after seven, the hour for work. It does not appear that there was, in such case, either time or necessity for a workman to resort to the sand house to warm before going to work. If defendant had known that plaintiff would get up at five, take a street car, then walk a mile, and get to the sand house fifteen or twenty minutes before seven, instead of leaving home at six and arriving on its cars at seven, it may have kept some one in charge of the sand house ready to look after his welfare.

We are of the opinion that the relation of master and servant did not exist between defendant and plaintiff at the time of the injury, and that defendant owed plaintiff no duty with reference to such stove.

The judgment is reversed.

PER CURIAM:—The foregoing opinion of Roy, C., in Division Two, is adopted as the opinion of Court in Banc. *Walker, Faris, Woodson* and *Graves, JJ.,* concur; *Bond, C. J., Blair* and *Williams, JJ.,* dissent, and think the case should be reversed and remanded.